IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY ROBINSON,<br><br>**Plaintiff,**<br><br>v.<br><br>**WEXFORD HEALTH SOURCES, INC., et al.,**<br><br>**Defendants**. | Case No. 17-cv-08556<br><br>Judge Mary M. Rowland |

### MEMORANDUM OPINION & ORDER

Plaintiff Anthony Robinson, a former inmate at Sheridan Correctional Center, brings suit under 42 U.S.C. § 1983 alleging that Defendant Robin Rose, the Health Care Unit Administrator at Sheridan, was deliberately indifferent to his serious medical condition in violation of his Eight Amendment rights. Plaintiff also brings a claim of intentional infliction of emotional distress under state law. Before the Court is Defendant Rose's motion for summary judgment [88]. For the following reasons, Defendant's motion is granted.

### BACKGROUND

Plaintiff Anthony Robinson is a former inmate at Sheridan Correctional Center ("Sheridan"), an Illinois Department of Corrections ("IDOC") facility.[1] (Dkt. 97 at ¶ 1). The events giving rise to this suit occurred at Sheridan while Robinson was an inmate. (*Id.* at ¶ 5). On December 7, 2016, Robinson injured the fifth finger of his left

---

[1] Robinson voluntarily dismissed his claim for deliberate indifference based on the failure to provide him medications prior to being released from Sheridan. (Dkt. 97 at ¶ 7).

1

hand while playing basketball. (*Id.* at ¶8). A few hours later, Robinson was taken to the Valley West Hospital emergency room where he received an x-ray and finger cast. (Dkt. 100 at ¶ 34).² The emergency room physician, Dr. John Massimilian, opined that Robinson had dislocated his finger and "referred [him] for close orthopedic follow up." (*Id.* at ¶ 36); (Dkt. 97 at Exhibit H). Upon his return to Sheridan, Robinson, received follow up care at the Sheridan Health Care Unit. (Dkt. 100 at ¶ 37). Over four months later, on April 24, 2017, Robinson saw an orthopedic specialist, Dr. Ryan Kenny at Midwest Orthopedic Institute. (*Id.* at ¶ 40); (Dkt. 97 at Exhibit I). According to Robinson, Dr. Kenny informed him that the only options available for his finger were amputation or pin insertion. (Dkt. 100 at ¶ 41). Robinson opted for the latter. (*Id.* at ¶ 42). Shortly thereafter, on May 30, 2017, Dr. Kenny performed a surgical procedure to insert pins into Robinson's injured finger. (*Id.* at ¶¶ 43-44); (Dkt. 100 at Exhibit J). After the surgery, Robinson claims Dr. Kenny advised him that he needed physical therapy. (Dkt. 100 at ¶ 44).

On May 31, 2017, the day after his surgery, Robinson submitted a formal grievance requesting the opinion of a second specialist regarding his finger. (*Id.* at ¶ 57); (Dkt. 97 at Exhibit E). Robinson stated that a week after returning from the emergency room for his injury, he saw a Dr. Roz at Sheridan who prescribed a therapeutic exercise involving squeezing a ball for six weeks. (Dkt. 97 at Exhibit E). After trying the exercise for a short time, Robinson complained to Dr. Roz that "it was

---

² Defendant disputes the relevance of several statements of fact regarding the medical care Robinson received for his finger. (See Dkt. 100 at ¶¶ 34-38; 41-45). The Court finds these statements pertinent to understanding the basis for Robinson's § 1983 claim.

extremely painful" and that his "finger wasn't working." (*Id.*) Subsequently, Dr. Roz treated Robinson's finger with Novocain and "rubbed [the] finger trying to reset it." (*Id.*) Robinson further stated, "I believe that my injury was misdiagnosed, and because of the lapse of time and severeness of it, that malpractice and gross negligence may be applicable." (*Id.*)

Defendant Robin Rose is a nurse by profession and was the Health Care Unit Administrator at Sheridan from December 2015 through January 2018. (Dkt. 97 at ¶¶ 3; 32). In her capacity as Health Care Unit Administrator, Rose reviewed and investigated inmate grievances regarding medical care and made recommendations as to the merits of the grievance. (Dkt. 100 at ¶¶ 49; 55). Rose testified that if applicable she would raise her concerns regarding an inmate's treatment or care to the medical personnel involved. (Dkt. 90 at 63-64).

Rose reviewed Robinson's May 31, 2017 grievance and advised that the grievance had no merit:

> The medical record has been reviewed and it was noted that Mr. Robinson has been followed by UIC. Mr. Robinson has a follow-up appointment next week with orthopedics. Mr. Robinson was seen by the nurse practitioner on 7/17/2017 for a pain medication refill.
>
> Recommendation: No Merit

(Dkt. 97 at Exhibit E). Relying on this recommendation, the grievance officer and warden deemed Robinson's grievance moot and denied his request for a second opinion. (*Id.*)

On July 17, 2017, Robinson had a follow up appointment with Dr. Kenny, who removed the stitches from Robinson's finger. (Dkt. 88 Exhibit 1 at 72).

3

On October 11, 2017, Robinson saw Rose in the Health Care Unit. (Dkt. 100 at ¶ 62). During this visit, Rose advised Robinson "to continue range of motion and limit heavy lifting" and "[a]ssured [him] there would be a follow up with NP [nurse practitioner]." (*Id.* at ¶ 63).

On October 16, 2017, Robinson filed a second grievance requesting an offsite orthopedic therapy appointment because his previous appointment for offsite therapy in September was cancelled and never re-scheduled. (*Id.* at ¶ 58); (Dkt. 97 at Exhibit F). Rose reviewed this grievance, conducted an investigation, and determined the grievance had no merit. (Dkt. 100 at ¶ 59-60). Rose explained:

> The medical file has been reviewed and it is noted that on 10.05.2017 the nurse practitioner noted there was a 6 week follow up after completing PROM and ROM and massage for the 5th left finger. After completing these instructions for 6 weeks the Nurse practitioner noted that she was resubmitting the collegial request. On 10/13/2017 the nurse practitioner noted that the collegial had been denied and to continued [sic] previous treatment plan.

(Dkt. 97 at Exhibit F). Collegial review is a process through which inmates' requests for offsite care are approved or denied.[3] (Dkt. 90 at 64). Relying on Rose's recommendation, the grievance officer and warden denied Robinson's grievance. (Dkt. 97 at Exhibit F).

At some point after injuring his finger, Robinson also claims he submitted sick call slips directed to Rose requesting "to meet with her and complain about whatever was going on," but that Rose never responded. (Dkt. 88 Exhibit 1 at 131); (Dkt. 100 at ¶ 48). Sick call slips are requests to see medical staff for medical issues an inmate

---

[3] Rose attended collegial review sessions, but testified that her role was to be informed, and not to make a decision regarding whether to approve offsite care. (*Id.* at 72-73).

may have. (Dkt. 88 Exhibit 1 at 21-22). Robinson does not know whether Rose received the sick call slips or when he sent them. (*Id.* at 133). Rose was not asked at her deposition about receiving sick call slips from Robinson. (Dkt. 90).

On November 27, 2017, Robinson filed the present action against Rose and other prison medical providers claiming they were deliberately indifferent to his finger injury by perpetuating ineffective treatment and delays in offsite care. Robinson also brings state law claims of intentional infliction of emotional distress. Rose moves for summary judgment on the claims against her. The remaining Defendants have since been dismissed from the case (Dkt. 95) or are unidentified.

## **LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986).

After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and

5

facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## ANALYSIS

### I. Deliberate Indifference

To successfully challenge medical care under the Eighth Amendment, an inmate must demonstrate that the defendant prison official was deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). The deliberate indifference standard requires the plaintiff to establish "that (1) the medical condition was objectively serious, and (2) the state official[ ] acted with deliberate indifference to his medical needs, which is a subjective standard." *Sherrod*, 223 F.3d at 610. The subjective prong is met if an official "'knows of and disregards an excessive risk to inmate health and safety.'" *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The parties do not dispute that Robinson's finger injury constitutes an objectively serious medical condition. Rather, Rose moves for summary judgment arguing that the evidence does not establish that she acted with deliberate indifference.

Robinson argues that Rose, through her review of his sick call slips, grievances and her medical visit with him on October 11, 2017, was subjectively aware of the deficient medical care he was receiving for his finger and that her failure to take appropriate remedial action constituted deliberate indifference. The evidence presented to the Court, however, fails to establish that Robinson's complaints or medical visit were sufficient to place Rose on notice of an excessive risk to his health or safety. While "a prison official's knowledge of prison [medical] conditions learned from an inmate's communication can, under some circumstances, constitute sufficient knowledge of the conditions to" establish deliberate indifference, "[t]he plaintiff still has the burden of demonstrating that the communication in its content and manner of transmission gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993-94 (7th Cir. 1996) (quoting *Farmer*, 511 U.S. at 837).

Beginning with the sick call slips, even if Robinson had established that Rose received these slips, which he has not, he fails to present any evidence of the content of the submissions other than that they contained "complain[ts] about whatever was going on." (Dkt. 88 Exhibit A at 131); (Dkt. 100 at ¶ 48) ("Plaintiff wrote sick call slips specifically addressed to Defendant Rose, requesting to meet with her and complain about various issues …."). Without such evidence, there is not a genuine issue of triable fact regarding whether the sick call slips placed Rose on notice of an excessive risk to Robinson's health.

7

Similarly, Robinson does not present evidence regarding the medical visit with Rose on October 11, 2017 suggesting that Rose should have been alerted to a risk to Robinson's health. The only evidence concerning the visit is a note by Rose documenting the visit that reads: "Met with patient and explained to continue range of motion and limit heavy lifting. Assured patient there would be follow up with NP." (Dkt. 100 at ¶ 63). Robinson argues that at the visit Rose "made the decision to continue his current improper course of treatment," but fails to present evidence showing that Rose would have known that his current treatment was improper. (Dkt. 96 at 7). The note does not indicate, and Robinson does not claim, that he complained to Rose during the visit about the medical care he had received for his finger or that he requested offsite care.

Finally, the evidence does not allow a rational jury to find that Rose was aware of an excessive risk of harm to Robinson from her review and investigation of Robinson's grievances. In the first grievance filed on May 31, 2017, Robinson complained about the ineffective medical care he received from Dr. Roz at Sheridan prior to his surgery and requested to see a second orthopedic specialist. (Dkt. 97 at Exhibit E). The grievance itself indicates that when Robinson complained that the prescribed ball exercises were too painful, Dr. Roz modified his course of care by opting for Novocain treatment and attempting to re-set Robinson's finger. (Dkt. 97 at Exhibit E). Thus, the grievance establishes that Robinson disagreed with the course of treatment he received, which is insufficient in itself to establish deliberate indifference, *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement

8

between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation."). But in any event, the grievance informed Rose that Dr. Roz had modified the treatment to address Robinson's concerns. (Dkt. 97 at Exhibit E).

Regarding Robinson's request to see a second orthopedic specialist, because inmates do not have a constitutional right to the opinion of a specialist, the "refusal to refer [an inmate to a specialist] supports a claim of deliberate indifference only if that choice is blatantly inappropriate." *Id.* at 411 (internal quotations omitted). Furthermore, prior to submitting his grievance, Robinson had seen an offsite orthopedic specialist, Dr. Kenny, and received surgical intervention. Rose further observed that Robinson had also been seen by an offsite provider at UIC and had a follow up appointment the following week with Dr. Kenny. (Dkt. 97 at Exhibit E). Under these facts, it would not have been clear to Rose that Robinson needed to see a specialist. No rational jury could find deliberate indifference on Rose's part on this record.

In his second grievance, filed on October 16, 2017, Robinson complained that his offsite physical therapy appointment had been cancelled and requested that it be rescheduled. (Dkt. 97 at Exhibit F). As Rose noted in her response memorandum, however, Robinson's appointment had been cancelled because his request for offsite physical therapy was denied through the collegial review process. (*Id.*) The recommendation of the collegial review team was to continue the onsite physical

9

therapy routine consisting of PROM (passive range of motion) and ROM (range of motion) exercises and massage. (*Id.*) Robinson argues that Rose's denial of this grievance was "particularly troubling" because she "continued to ignore Plaintiff's complaints about the ineffectiveness of such [onsite] physical therapy and perpetuated the medical decision to continue the same ineffective exercises, which led to the loss of Plaintiff's use of his finger." (Dkt. 96 at 8-9). But Robinson fails to raise a genuine issue of triable fact as to whether Rose knew that the physical therapy Robinson was receiving at Sheridan was ineffective. First, the grievance itself did not contain any complaints regarding the quality or effectiveness of the physical therapy Robinson was receiving at Sheridan. While Robinson's first grievance complained about therapeutic ball exercises, it is unclear whether the ball exercises were the same as the PROM and ROM exercises recommended by the collegial team. Second, Robinson argues that Rose must have been aware that the treatment was ineffective from her review of his medical records but fails to point to any fact in the limited medical record he provides that would have revealed this. Finally, Robinson suggests that Rose should have known the physical therapy was ineffective because after six weeks of PROM and ROM exercises and massage a nurse practitioner submitted a collegial request for offsite physical therapy on Robinson's behalf. The collegial team consisting of doctors, however, disagreed that offsite physical therapy was necessary. As noted above, a "[d]isagreement between … two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409. Robinson argues at length that as a

10

nurse, Rose could not blindly defer to the medical judgment of physicians, but the evidence fails to show that Rose was aware of an excessive risk to Robinson's health or safety to necessitate her interference.

On the facts presented to the Court, no rational trier of fact could find that Rose was deliberately indifferent to Robinson's finger injury.[4] Rose's motion for summary judgment on the § 1983 claim is granted.

## II. Intentional Infliction of Emotional Distress

Under Illinois law, to succeed on a claim for intentional infliction of emotional distress ("IIED") a plaintiff must shows"(1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997). Because Robinson has failed to supply an adequate factual basis to support a finding of deliberate indifference against Rose, however, Robinson's IIED claim must also fail. *See e.g, Harrison v. Cty. of Cook*, No. 08 C 3202, 2011 WL 4036115, at *10 (N.D. Ill. Sept. 12, 2011) ("[Plaintiff] has failed to show that there is a genuine issue of fact regarding whether [Defendants] were deliberately indifferent to his serious medical needs. … Accordingly, [Defendants] are entitled to summary judgment on [Plaintiff]'s IIED claims against them."); *Hardy v. Hardy*, No. 10 C 5921, 2013 WL 5325077, at

---

[4] Having concluded that Rose was not deliberately indifference to Robinson's serious medical condition, the Court declines to consider her arguments that she (1) lacked personal involvement in the alleged constitutional deprivation or (2) is entitled to qualified immunity.

11

\*3 (N.D. Ill. Sept. 20, 2013) ("[B]ecause [Defendant] was entitled to summary judgment on [Plaintiff]'s deliberately indifference claim, it necessarily follows that [Plaintiff]'s direct IIED claim against [Defendant] fails as well.); *Wells v. Bureau Cty.*, 723 F. Supp. 2d 1061, 1089 (C.D. Ill. 2010) ("Plaintiffs' failure to establish an adequate factual basis to support a finding of deliberate indifference or willful and wanton conduct on their § 1983 claim necessarily precludes them from making an adequate showing of extreme and outrageous conduct or that any individual defendant intentionally or recklessly caused severe emotional distress as a matter of law."). There is no evidence that Rose intentionally ignored Robinson's complaints of a known risk to his health. Rose is therefore entitled to summary judgment on the IIED claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

E N T E R:

Dated: August 31, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge